## MAINS *v.* THE STATE.

CRIMINAL LAW.—*Indictment.*—*Nuisance.*—The keeping of a house where tippling and whoring are carried on is not a nuisance, unless the public is affected by it, and an indictment therefore must show such facts as establish this consequence.

APPEAL from the Noble Circuit Court.

WORDEN, J.—The appellant was indicted for a nuisance and convicted, and judgment was rendered against her over motions to quash and in arrest of judgment. Exception.

The following is the indictment:

"STATE OF INDIANA ⎫
⎬  Indictment for Nuisance.
NANCY MAINS. ⎭

"The Grand Jurors of Noble County, in the State of Indiana, good and lawful men, duly and legally empanelled, charged, and sworn to inquire into felonies and certain misdemeanors, in and for the body of said county of Noble, in the name and by the authority of the State of Indiana, on their oaths present, that one Nancy Mains, late of said county, on the 20th day of April, in the year A. D. 1872, and on divers other days and times between that day and the making of this presentment, at the county of Noble and State of Indiana, did then and there unlawfully keep and maintain a certain common, ill-governed, and disorderly house, and in said house certain persons, as well men as women, of ill name and fame, and of dishonest con-

versation, then and there, on the said other days and times, unlawfully and willingly did cause and procure to frequent and come together, and the said men and women in the said house of said Nancy Mains at unlawful times, as well in the night as in the day, then and on the said other days and times, there to be and remain, drinking, tippling, whoring, and misbehaving themselves, unlawfully and wilfully did permit, and yet doth permit, to the great damage and common nuisance of all the citizens of the State of Indiana, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana.        WILLIAM B. McCONNELL,

"Prosecuting Attorney."

Several objections are made to the indictment, but we shall notice one only, as that seems to be fatal, whatever might be said in respect to the others.

The indictment does not allege that the house which the appellant was charged with keeping was situate in any public place, as in a city, town or village, nor near any public street or highway; nor does it allege that any person resided near thereto, or was in the habit of passing thereby. In short, there is nothing in the indictment which shows that the house was in the vicinity of any inhabitants, or that any person ever came near it, save those who congregated there by the alleged procurement of the appellant. In the language of the counsel for the appellant, "for aught that appears, it may have been in the woods, away from the sight and hearing of every citizen of the State."

The keeping of a house where tippling, drinking, and whoring are carried on is not a nuisance, unless the public is affected by it.

A writer on criminal law says: "The term disorderly house is sometimes used in a very broad sense, as including bawdy-houses, common gaming-houses, and places of a like character, to which people promiscuously resort for purposes injurious to the public morals, or health, or convenience, or safety. These places are all indictable as public nuisances.

Mains *v.* The State.

\*    \* A house so kept that no persons other than its inmates are liable to be disturbed by it, or corrupted in their morals, or anything of the sort, is not in law a disorderly house.    \*    \* The difficulty within must reach beyond the mere inmates, and affect the public." 1 Bishop Crim. Law, secs. 1046, 1051.

Inasmuch as such a house as that described in the indictment is not a nuisance *per se,* but can only become so by reason of the public being affected thereby, the indictment should have alleged the facts making it a nuisance, as that it was in a public place, or that people resided near thereto, or other similar circumstances, showing that the public was affected thereby.

" The indictment for a nuisance, as for every other offence, must set out so much of fact as to make the criminal nature of what is charged against the defendant appear. Thus, where a thing is not a nuisance in itself, but becomes so only by reason of particular circumstances, this special matter—in other words, these circumstances—must be shown ; else there is no crime laid against the defendant." 2 Bish. Crim. Proced., sec. 813.

The indictment, it is true, alleges that it was "to the great damage and common nuisance of all the citizens of the State of Indiana," but this conclusion will not supply the omitted facts. " There is no power in a conclusion of this sort to supply any defect in the main body of the allegation." 2 Bish. Crim. Proced., sec. 812. Wharton says, " An allegation in an indictment that certain facts charged were 'to the common nuisance of all the good citizens of the state,' will not make a good indictment for a common nuisance, unless these facts be of such a nature as may justify that conclusion as one of law as well as of fact." Whart. Crim. Law, sec. 2362.

There are some other questions in the case which are ably discussed by the counsel for appellant, such as the necessity of a statutory description of the offence of a nuisance, and whether any such description embraces such facts as are charged in this indictment, but we pass them over as not

being essential to the decision of the cause. We hold the indictment bad, for the reason, if for no other, that it does not aver any facts showing that the public was in any manner affected by the house which the appellant was charged with keeping.

The judgment below is reversed, and the cause remanded, with instructions to the court below to quash the indictment.

*W. M. Clapp, F. Prickett,* and *A. A. Chapin,* for appellant.

*J. C. Denny,* Attorney General, for the State.